IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTONIEA DRAKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:12-cv-70-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Antoniea Drake ("Plaintiff" or "Claimant"), seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is AFFIRMED.

### Background

Plaintiff alleges that she is disabled as a result of rheumatoid arthritis, obesity, hypothyroidism, a back disorder, and depression. *See* Administrative Record [Dkt. No. 18] ("Tr.") at 19-20. After her applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *See id.* at 17. That hearing was held on August 14, 2009. At the time of the hearing, Plaintiff was 46 years old. *See id.* at 35. She is a high school graduate and has attended some college, completing approximately 59 credits. *See id.* at 36-37. She has past work experience as a substitute teacher, *see id.* at 41, a teacher's aide, *see id.* at 24, a receptionist, *see id.* at

44, and a showroom manager, *see id.* at 45. While Plaintiff worked as a substitute teacher on a part-time basis until April 2009, the ALJ found that it did not constitute substantial gainful activity. *See id.* at 19. The ALJ concluded that Plaintiff has not engaged in substantial gainful activity since April 30, 2007. *See id.*

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from rheumatoid arthritis, obesity, hypothyroidism, and a back disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ also determined that while Plaintiff alleged depression as a disabling impairment, the impairment was non-severe under the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). *See* Tr. at 20. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as a teacher's aide, receptionist, and a show room manager. *See id.* at 24. In making this determination, the ALJ found that Plaintiff had the RFC to perform light level work in that Plaintiff could perform work "requiring lifting and carrying a maximum of 20 pounds occasionally and 10 pounds frequently; her ability to sit, stand, and walk at work is not compromised; she can occasionally climb, balance, stoop, kneel, crouch, and crawl; and she can frequently handle and finger." *See id.* at 21. The ALJ also found that, even though Plaintiff is capable of performing past relevant work, other jobs existed in the national economy that Plaintiff can also perform. *See id.* at 25. Therefore, the ALJ made an alternate finding that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could

perform the jobs of photo copy machine operator, counter clerk, or information clerk – jobs that exist in significant numbers in the national economy. Given her age, education, and exertional capacity for light work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed. *See id.* at 4.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds: (1) the ALJ's credibility findings are not supported by substantial evidence, and (2) the ALJ improperly rejected the treating and examining physicians' opinions.

The Court determines that the hearing decision is affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not

-3-

reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the

claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

1.   <u>Credibility Assessment</u>

Plaintiff first contends the ALJ's credibility determination was not supported by substantial evidence. In her decision, the ALJ, after careful consideration of the evidence, found that Plaintiff's medically determinable impairments could reasonably be expected to produce some symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. *See* Tr. at 21. Plaintiff argues that this finding was insufficiently specific and that the evidence does

not support the ALJ's findings. *See* Dkt. No. 22 -1 at 12-15. Plaintiff contends that the ALJ impermissibly "cherry-picked" the evidence favorable to her ultimate finding and did not address the unfavorable evidence. *See* Dkt. No. 25 at 4. Defendant argues that the ALJ considered a number of factors before concluding that Plaintiff's subjective complaints were not credible, that the ALJ's credibility determination is entitled to considerable deference, and that, as a result, the ALJ's determination should be affirmed. *See* Dkt. No. 23 at 15-16.

As to the specificity argument, Plaintiff argues that the ALJ relied on "boilerplate language" that "the claimant's medically determinable impairments could reasonably be expected to produce some symptoms; but, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." Dkt. No. 22-1 at 11. Based on several decisions out of the United States Court of Appeals for the Seventh Circuit, Plaintiff argues that this language constitutes an improper basis for making a credibility finding. *See id.* at 11-12. Even if Plaintiff is correct that this language alone may not support such a finding, and even if the Seventh Circuit case law was binding on this Court, the Court notes that the ALJs' decisions at issue in the out-of-circuit cases on which Plaintiff relies are different than the ALJ's decision in the instant case. In the ALJs' decisions in the cases on which Plaintiff relies, the ALJ simply made a boilerplate finding and did not properly evaluate all of the evidence and the claimant's testimony in order to evaluate the claimant's credibility. *See id.* (citing *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Punzio v. Astruei,* 630 F.3d 704, 710

(7th Cir. 2011); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011)). In the instant case, the ALJ did use the boilerplate language of which Plaintiff complains, but the ALJ also provided an analysis detailing how she reached her conclusion. *See, e.g.*, Tr. at 21-22 ("In particular, the finding of diminished credibility is supported by inconsistencies between the claimant's allegations and the longitudinal medical record, including her treating doctor, as demonstrated below and her activities during the time she alleges she was disabled, including attending college and substitute teaching."). As such, here, Plaintiff's complaints regarding the ALJ's decision's alleged lack of specificity complaints do not warrant reversal.

Plaintiff further argues that the ALJ's credibility findings are not supported by substantial evidence. Plaintiff contends that the ALJ erred in assessing her credibility by placing a disproportionate amount of weight on some of Plaintff's daily activities – such as attending school and working part-time – and discounting or ignoring certain medical records supporting Plaintiff's testimony. *See* Dkt. No. 22-1 at 12. In making this argument, Plaintiff relies primarily on notes in the records of Dr. Fesmire and Dr. Brodsky stating that Plaintiff had good days and bad days. *See id.* at 12, 13.

In making a credibility determination, the ALJ must consider the objective medical evidence, as well as other factors, including:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

(7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008) (discussing factors). However, "[t]he ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n.30 (5th Cir. 2011).

The ALJ may not have mechanically mentioned each of the above factors, but it is evident that she considered many of them. She discussed Plaintiff's daily activities, *see* Tr. at 22, and the frequency, intensity and duration of Plaintiff's pain and symptoms, *see id.* at 21, 22, among other factors. Moreover, the ALJ discussed, in great detail, the conclusions drawn by each physician, treating or otherwise, and why and to what extent the physicians' notes and records did, or did not, support Plaintiff's claims.

The ALJ reviewed several notes from the records of Dr. Alan Brodsky without comment. *See id.* at 22. The ALJ later stated that Dr. Brodsky "often indicates that [Plaintiff] was generally doing well with her rheumatoid arthritis symptoms," and the ALJ concluded that the "evidence clearly shows that [Plaintiff] has had good control

of her arthritis with prescribed medication." *Id.* at 23. The ALJ then reviewed the Physical Residual Functional Capacity Questionnaire ("Physical RFC Questionnaire") that Dr. Brodsky completed in November 2009, wherein Dr. Brodsky stated that Plaintiff could occasionally lift up to 10 pounds, stand and walk at total of 2 hours during an 8-hour work day, and sit for about 4 hours during an 8-hour work day. *See id.* at 24. Dr. Brodsky also found that Plaintiff would occasionally need rest periods and would miss 2 to 3 days of work due to exacerbations of pain. *See id.* The ALJ stated that she "did not accept this opinion despite the fact that the doctor treats the claimant for her rheumatoid arthritis" because it "conflicts with the doctor's own statements in his treating records that generally indicate [Plaintiff's] rheumatoid arthritis is well controlled with medication and she reports little pain when she sees him." *Id.* at 24.

In reviewing the records in their entirety, the Court concludes that the ALJ's conclusion was supported by the record. While Dr. Brodsky may have reached certain conclusions in the Physical RFC Questionnaire that he completed in November 2009, the bulk of his medical records and notes do not support his conclusion. Time and time again, he notes that Plaintiff was "doing well," or had "little in the way of pain, swelling, or stiffness," or was "overall comfortable." *E.g.*, *id.* at 321, 325, 326, 488, 520. Thus, while this Court may not reweigh the evidence or substitute its judgment for the Commissioner's, the Court determines that there is substantial evidence to support the ALJ's conclusion that certain of Plaintiff's claims and testimony was not credible, based on the inconsistencies in Dr. Brodsky's own records and with Plaintiff's claims.

The ALJ also reviewed and rejected the parts of Dr. Lige Rushing's opinion to the extent that it "conflict[ed] with the RFC" in the ALJ's decision. *Id.* at 22. The ALJ treated Dr. Rushing's opinion as that of an "examining but non-treating" physician in finding that "the majority of the evidence in the record, including the claimant's statements to her treating physician and her ability to work part time as a substitute teacher" as "not supportive of [Dr. Rushing's] opinion to the extent that the doctor meant the claimant could not do work of light exertion." *Id.* The Court again notes that there is evidence to support this conclusion, not the least of which is Dr. Rushing's own conclusion that Plaintiff's ability "to hear, to see, to speak, and to sit does not appear to be substantially impaired." *Id.* at 349.

The ALJ reviewed the records of Dr. Susan Fesmire and concluded that they "generally demonstrated few objective signs." *Id.* at 23. The ALJ referenced a March 20, 2008 "to whom it may concern" letter stating that Plaintiff had "episodic flare-ups of rheumatoid arthritis, MGUS of uncertain significant, chronic lumbar pain and scoliosis and hypothyroidism," but the ALJ concluded that, to the extent the letter was meant to indicate that Plaintiff was disabled, the ALJ did "not accept this opinion." *Id.* The ALJ also reviewed a "Arthritis Residual Functional Capacity Questionnaire" ("Arthritis RFC Questionnaire) completed by Dr. Fesmire. *See id.* at 24. In it, Dr. Fesmire opined that Plaintiff "was incapable of even a low stress job" and stated that Plaintiff "could sit, stand and walk less than 2 hours during an 8-hour workday." *Id.* The ALJ did not accept the opinion, determining that "the actual medical records reflect very few if any objective findings" to support the conclusions made in the

questionnaire and that Plaintiff's work as a substitute teacher did not support these conclusions. *Id.* While Dr. Fesmire may have reached certain conclusions in the Arthritis RFC Questionnaire and her August 2008 letter, many of Plaintiff's medical records and notes do not support these conclusions. As noted above, much of the medical record evidence includes notations that Plaintiff was "doing well," or had "little in the way of pain, swelling, or stiffness," or was "overall comfortable." *E.g.*, *id.* at 321, 325, 326, 488, 520; *see also id.* at 447 (Dr. Fesmire noting no joint swelling, no joint stiffness, no back pain), *id.* at 450 (same). Thus, again, there is substantial evidence to support the ALJ's credibility conclusion.

The ALJ noted that Dr. Jaya Juturi had records with statements from Plaintiff indicating that she was doing well and that her arthritis treatment "made a world of difference." *Id.* at 23. The ALJ noted that these statements "are significant." *Id.* This suggests that the ALJ relied on these records to support her finding of diminished credibility, and, after reviewing the record, the Court determines that Dr. Juturi's notes do constitute evidence to support the ALJ's finding of diminished credibility. The Court also notes that Dr. Juturi treated Plaintiff over the course of three years, *see id.* at 472, 475, & 479, and as such was, at the least, an examining physician and possibly a treating physician, *see* 20 C.F.R. § 404.1502.

Finally, the ALJ accepted the state agency doctor's opinion that Plaintiff could perform work generally compatible with light work, but the ALJ rejected the part of that doctor's opinion in which the state agency doctor found that Plaintiff had a limitation in her ability to sit at work. *See* Tr. at 24. The ALJ found this portion of the

opinion unsupported by the preponderance of the evidence. *See id.* And there are instances in the record supporting this conclusion – that is, that Plaintiff's ability to sit is unimpaired. *See, e.g., id.* at 349. The ALJ also found that Plaintiff's daily activities – specifically, her part-time college attendance and part-time work – to be inconsistent with her claims. While Plaintiff did receive special accommodations for her college attendance, it was within the ALJ's purview to consider all of this daily activity in making her assessment. *See Shipp v. Astrue*, No. 5:12-cv-5-BG, 2012 WL 6708550, at *5 (N.D. Tex. Aug. 30, 2012), *rec. adopted*, 2012 WL 6709645 (N.D. Tex. Dec. 27, 2012). These factors provide additional evidence to support the ALJ's credibility determination. *See id.*; *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir.1990) (finding that inconsistencies between a claimant's testimony about his limitations and his daily activities is a relevant consideration in the evaluation of a claimant's credibility).

The mere existence of pain does not establish disability. *See Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir.1995). It is the ALJ's responsibility, and within her discretion, to determine whether pain is disabling, and her determination is entitled to considerable deference and should be upheld, if it is supported by substantial evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

In this case, the ALJ's determination that Plaintiff's pain and other symptoms were not disabling is supported by substantial evidence. As such, the Court determines that Plaintiff's arguments with respect to ALJ's credibility determination are not grounds for reversal of the ALJ's determination.

2.    Treating and Examining Physician Rule

Plaintiff's arguments regarding the ALJ's improper rejection of Plaintiff's treating and examining physicians are closely tied to her arguments regarding the ALJ's credibility determination. In essence, Plaintiff appears to argue that the ALJ rejected the opinions of any physicians whose medical opinions and records supported Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms – which, according to Plaintiff, was incorrect – and in doing so found that she had no support for her testimony. In her Decision, the ALJ noted that she considered the evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Rulings ("SSRs") 96-2p, 96-5p, 96-6p, and 06-3p. *See* Tr. at 21. Plaintiff asserts that the ALJ erred by failing to analyze the six factors found in 20 C.F.R. § 404.1527(d) before rejecting the opinions of Plaintiff's treating physicians. *See* Dkt. No. 22-1 at 18.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-

specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). However, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Section 404.1527(d)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Id.* at 456. Specifically, the ALJ must consider:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(d)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(d) ("Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical

opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. However, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(d) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

As detailed more fully above, the ALJ reviewed the medical records in detail and concluded that, although the record established an underlying medical condition capable of "producing some pain and limitations in functioning, the substantial evidence fails to corroborate the degree of restrictions and limitations as alleged by [Plaintiff]." Tr. at 23. In this case, at least two treating physicians submitted medical records – Plaintiff's treating specialist for rheumatoid arthritis, Dr. Brodsky, and a treating physician, Dr. Fesmire.

Dr. Brodsky's records provided many instances of Plaintiff's overall good condition, while Dr. Fesmire's reports sometimes indicated a good condition, *see id.* at 447, 450, but other times noted joint swelling and pain, *see id.* at 441, 444. In addition to those physicians' records, the record also contains a RFC Assessment from Dr.

Brodsky, an Arthritis RFC Questionnaire from Dr. Fesmire (notwithstanding that Dr. Brodsky was Plaintiff's rheumatoid arthritis specialist), and assessments from the state consulting physician, Dr. Dolan. Dr. Brodsky stated that Plaintiff had some limitations, such as only being capable of sitting 4 hours each day, joint tenderness and swelling, and strength limitations, and would frequently need to change positions. *See id.* at 490-91. Dr. Fesmire concluded that Plaintiff "was incapable of even a low stress job" and stated that Plaintiff "could sit, stand and walk less than 2 hours during an 8-hour workday." *Id.* at 411. The state examining physician, Dr. Dolan, found Plaintiff to have only exertional limitations, which dictated that Plaintiff could sit for a total of less than 6 hours per day with some limitations related to Plaintiff's ability to lift. *See id.* at 365.

Plaintiff contends that all of these doctors, along with others in the Administrative Record, placed limits on her ability to sit, stand, push, pull, carry, and walk and that such limitations were rejected without proper consideration. *See* Dkt. No. 22-1. Plaintiff repeatedly relies upon several doctors' notes that she has good and bad days, which Plaintiff asserts "indicate[s] that there were days when she was not doing well or experienced exacerbations of pain." Dkt. 22-1 at 12, 17; *see also* Dkt. No. 25 at 7.

While Plaintiff is correct that Drs. Brodsky and Fesmire placed limitations on her ability to sit, stand, and walk, the ALJ is free to reject the opinion of any physician when, as here and as detailed more fully above, the medical evidence of record supports a contrary conclusion regarding Plaintiff's limitations and good cause is shown. *See*

*Newton*, 209 F.3d at 455-56. Moreover, the ALJ is only required to undergo the detailed analysis of the Section 404.1527(d) factors in those instances where there is no other reliable evidence from a treating or examining physician. *See Benton v. Astrue*, No. 3:12-cv-874-D, 2012 WL 5451819, at *4-*5 (N.D. Tex. Nov. 8, 2012). Here, there is the evidence from Drs. Rushing and Juturi, both examining physicians, that supports the ALJ's finding. Moreover, many of the medical records from Drs. Brodsky and Fesmire even support the ALJ's finding. Thus, assuming *arguendo*, that the ALJ did not undergo a detailed analysis of the factors, her failure to do so was not error insofar as a more detailed analysis was not required under the circumstances.

In any event, even if the ALJ improperly rejected, or gave lesser weight, to Plaintiff's treating physician without undertaking a sufficiently detailed analysis of the factors, any such error did not affect Plaintiff's substantial rights. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). The Court concludes that, even assuming that the ALJ was required to, and did not, undergo the detailed analysis of the Section 404.1527(d) factors, any such error did not prejudice Plaintiff. The record as a whole supports the ALJ's conclusion, even taking into account the limitations that some of her treating physicians, at times, stated applied to Plaintiff's capabilities, at least on what they described as Plaintiff's "bad days." Therefore, the Court finds that reversing and remanding for a more detailed analysis of the Section 404.1527(d) factors

would be futile in light of the evidence of record, which supports the ALJ's ultimate conclusion.

## Conclusion

The hearing decision is affirmed in all respects. Plaintiff's Motion for Summary Judgment [Dkt. No. 22] is DENIED, and Defendant's Cross Motion for Summary Judgment [Dkt. No. 24] is GRANTED.

DATED: September 17, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE